No. __________

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

IN RE JAYANTILAL PATEL,
*Petitioner,*

v.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA,
*Respondent;*

STOREBRAND ASSET MANAGEMENT AS; PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI; HANDELSBANKEN FONDER AB; ARKANSAS TEACHER RETIREMENT SYSTEM; SUPER MICRO COMPUTER, INC.; CHARLES LIANG; DAVID WEIGAND; YIH-SHYAN "WALLY" LIAW; APURVA BHUVA; CITY OF HIALEAH EMPLOYEES' RETIREMENT SYSTEM; BUNDY CHUNG; VALIKHAN KUNAKBAYEV; DAVID TRUONG; BEAU SAVAGE; JA HOUSING INC.; KELLY TRAN; AND LI QUNNAN,
*Real Parties in Interest*.

From a Decision of the United States District Court
for the Northern District of California
No. 3:26-cv-02606-JSC
The Honorable Jacqueline Scott Corley

**PETITION FOR WRIT OF MANDAMUS**

Reed R. Kathrein
Lucas E. Gilmore
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com
*Counsel for Petitioner* Jayantilal Patel

# CERTIFICATE OF INTERESTED PARTIES

## Affected Court Action

The District Court action from which this petition arises is entitled: *Bhuva v. Super Micro Computer, Inc.*, *et al.*, pending in the United States District Court for the Northern District of California, Case No. 3:26-cv-02606-JSC, the Honorable Jacqueline Scott Corley presiding.

## Petitioner

Petitioner is Jayantilal Patel, who moved for appointment as lead plaintiff in the action described above.

Petitioner is represented by Reed R. Kathrein and Lucas E. Gilmore of Hagens Berman Sobol Shapiro LLP, 715 Hearst Avenue, Suite 300, Berkeley, CA 94710.

Reed R. Kathrein
Lucas E. Gilmore
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Counsel for Petitioner*
Jayantilal Patel

## Respondent

United States District Court for the Northern District of California.

## Real Parties in Interest

The Real Parties in Interest are Storebrand Asset Management AS ("Storebrand"); Public Employees' Retirement System of Mississippi ("Mississippi"); Handelsbanken Fonder AB ("Handelsbanken"); Arkansas Teacher Retirement System; Super Micro Computer, Inc.; Charles Liang; David Weigand; Yih-Shyan "Wally" Liaw; Apurva Bhuva; City of Hialeah

Employees' Retirement System; Bundy Chung; Valikhan Kunakbayev; David Truong; Beau Savage; JA Housing Inc.; Kelly Tran; and Li Qunnan. These parties are represented by:

| | |
|---|---|
| *Counsel for Movants Institutional Investor Plaintiffs (Storebrand, Mississippi, Handelsbanken):*<br><br>**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**<br><br>Scott R. Foglietta<br>1251 Avenue of the Americas, 44th Floor<br>New York, NY 10020<br>(212) 554-1400<br>Scott.Foglietta@blbglaw.com<br><br>**KESSLER TOPAZ MELTZER AND CHECK LLP**<br><br>Jennifer Lauren Joost<br>One Sansome Street, Suite 1850<br>San Francisco, CA 94104<br>(415) 400-3000<br>Jjoost@ktmc.com<br><br>Naumon A Amjed<br>280 King of Prussia Road<br>Radnor, PA 19087<br>(610) 667-7706<br>Namjed@ktmc.com | *Counsel for Defendants Super Micro Computer, Inc., Charles Liang, and David Weigand:*<br><br>**FRESHFIELDS US LLP**<br><br>Boris Feldman<br>Doru Gavril<br>Freshfields US LLP<br>855 Main Street<br>Redwood City, CA 94063<br>(650) 618-9250<br>Boris.Feldman@freshfields.com<br>Doru.Gavril@freshfields.com<br><br>*Counsel for* Chung *Defendant Yih-Shyan "Wally" Liaw:*<br><br>**BIENERT KATZMAN LITTRELL WILLIAMS LLP**<br><br>Daniel Z. Goldman<br>Colm Burton Cross<br>Olivia Lauren Weber<br>903 Calle Amanecer, Suite 350<br>San Clemente, CA 92673<br>(949) 369-3700<br>Dgoldman@bklwlaw.com<br>Ccross@bklwlaw.com<br>Oweber@bklwlaw.com |
| *Counsel for Interested Party City of Hialeah Employees' Retirement System* | *Counsel for Movant Valikhan Kunakbayev*<br><br>**LEVI & KORSINSKY, LLP** |

| | |
|---|---|
| **KESSLER TOPAZ MELTZER AND CHECK LLP**<br><br>Jennifer Lauren Joost<br>One Sansome Street, Suite 1850<br>San Francisco, CA 94104<br>(415) 400-3000<br>Jjoost@ktmc.com<br><br>**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**<br><br>Scott R. Foglietta<br>Hannah Ross<br>1251 Avenue of the Americas, 44th Floor<br>New York, NY 10020<br>(212) 554-1400<br>Scott.Foglietta@blbglaw.com<br>hannah@blbglaw.com<br><br>**KLAUSNER KAUFMAN JENSEN & LEVINSON, P.A.**<br><br>Robert D. Klausner<br>Stuart A. Kaufman<br>7080 Northwest 4th Street<br>Plantation, FL 33315<br>Telephone: (954) 916-1202<br>bob@robertdklausner.com<br>stu@robertdklausner.com | Adam Marc Apton<br>1160 Battery Street East, Suite 100<br>San Francisco, CA 94111<br>(415) 373-1671<br>Aapton@zlk.com<br><br>*Counsel for Movant David Truong and Interested Party Apirva Bhuva*<br><br>**GLANCY PRONGAY WOLKE & ROTTER LLP**<br><br>Charles Henry Linehan<br>Robert Vincent Prongay<br>Pavithra Rajesh<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>(310) 201-9150<br>Clinehan@glancylaw.com<br>Rprongay@glancylaw.com<br>Prajesh@glancylaw.com<br><br>*Counsel for Movant JA Housing Inc.*<br><br>**THE ROSEN LAW FIRM, P.A.**<br><br>Laurence Matthew Rosen<br>355 South Grand Avenue, Suite 2450<br>Los Angeles, CA 90071<br>(213) 785-2610<br>Lrosen@rosenlegal.com |
| *Counsel for Movant Arkansas Teacher Retirement System*<br><br>**MOTLEY RICE LLP**<br><br>Wesley Dunkirk<br>1440 Broadway Suite 206<br>Oakland, CA 94612 | *Counsel for Movant Beau Savage*<br><br>**FARUQI & FARUQI, LLP**<br><br>Lisa Tamiko Omoto<br>1901 Avenue of the Stars, Suite 1060<br>Los Angeles, CA 90067 |

| | |
|---|---|
| (510) 368-7685<br>Wdunkirk@motleyrice.com<br><br>Lance V. Oliver<br>28 Bridgeside Boulevard<br>Mt. Pleasant, SC 29464<br>(843) 216-9000<br>Loliver@motleyrice.com<br><br>**LABATON SUCHAROW LLP**<br><br>Serena Hallowell<br>140 Broadway<br>New York, NY 10005<br>(212) 907-0700<br>Shallowell@motleyrice.com | (424) 365-3225<br>Lomoto@faruqilaw.com<br><br>*Counsel for Movants Kelly Tran and Li Qunnan*<br><br>**POMERANTZ LLP**<br><br>Jennifer Pafiti<br>1100 Glendon Avenue, 15th Floor<br>Los Angeles, CA 90024<br>(310) 405-7190<br>Jpafiti@pomlaw.com |

## STATEMENT OF RELATED CASES

Petitioner knows of no related cases pending in this Court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PARTIES ........ i

STATEMENT OF RELATED CASES ........ v

I. INTRODUCTION ........ 1

II. RELIEF SOUGHT ........ 6

III. ISSUES PRESENTED ........ 7

IV. STATEMENT OF THE CASE ........ 8

A. The PSLRA's Lead Plaintiff Framework ........ 8

B. Procedural History ........ 9

1. The District Court's Inconsistent Application of a Unique "Financial Interest" Metric ........ 11

2. The Court's Flawed and Legally Unsupportable Reasoning for a "Reinvestment" Exception to Justify Its Inconsistent Application ........ 12

3. The Speculative Holding on Typicality and Loss Causation ........ 14

4. The Inconsistent Treatment of Competing Incentives ........ 14

V. REASONS WHY THE WRIT SHOULD ISSUE ........ 15

A. The Mandamus Standard ........ 15

B. Factor 3: The District Court Clearly Erred by Replacing the PSLRA's Mandatory Sequence with a Non-Statutory Comparative Selection Methodology ........ 17

1. The Personal-Retention Metric Conflicts with the Statute and Was Inconsistently Applied ........ 17

2. The Court's Typicality and Adequacy Conclusions Misapplied the Governing Standards and Were Unsupported by the Record ....................................................20

3. The Speculative Rebuttal Finding Applied the Wrong Object of Proof............................................................24

4. The Inconsistent Treatment of Comparable Incentive Issues Confirms Structural Error ..............................25

C. Factors 1 and 2: No Adequate Alternative Remedy Exists and Patel Will Be Irreparably Damaged ............................................26

D. Factor 4: Oft-Repeated Error..............................................................27

E. Factor 5: New and Important Issue of First Impression......................28

VI. CONCLUSION..........................................................................................29

CERTIFICATE OF COMPLIANCE.......................................................................31

CERTIFICATE OF SERVICE ...............................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. Sea Haw. Rafting, LLC*,
889 F.3d 517 (9th Cir. 2018) ....................16

*Bauman v. United States District Court*,
557 F.2d 650 (9th Cir. 1977): (1) ....................15, 28

*Bodri v. Gopro, Inc.*,
2016 WL 1718217 (N.D. Cal. Apr. 28, 2016)....................23

*Brown v. Ticor Title Ins. Co.*,
982 F.2d 386 (9th Cir. 1992) ....................23

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ....................*passim*

*In re Crain Walnut Shelling, LP*,
175 F.4th 1069 (9th Cir. 2026) ....................5, 16, 24

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................21, 23

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ....................21

*Hsu v. Pubmatic, Inc.*,
2025 WL 3280896 (N.D. Cal. Nov. 25, 2025) ....................11

*In re Kirkland*,
75 F.4th 1030 (9th Cir. 2023) ....................6, 16, 28

*Kusen v. Herbert*,
2023 WL 8171736 (N.D. Cal. Nov. 24, 2023) ....................22, 27, 28

*May v. Barclays PLC*,
2023 WL 5950689 (S.D.N.Y. Sept. 13, 2023) ....................11, 20

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) ....................*passim*

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013) ....................21, 22

*Retail Wholesale Dep't Store Union Local 338 Ret. Fund v. Stitch Fix, Inc.*,
2023 WL 3613313 (N.D. Cal. May 22, 2023)....................27

*Sigman v. NuScale Power Corp.*,
2024 WL 727253 (D. Or. Feb. 22, 2024) ....................21, 22, 28

*Sprint Communications Co. v. APCC Services, Inc.*,
554 U.S. 269 (2008)....................17

*Tanne v. Autobytel, Inc.*,
226 F.R.D. 659 (C.D. Cal. 2005)....................22

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(i) ....................2, 29

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)–(II)....................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc) ....................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ....................3, 17

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)....................8, 24

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb)....................4, 7

# I. INTRODUCTION

This petition presents two unresolved questions of first impression that reach far beyond the parties to this case. The Private Securities Litigation Reform Act ("PSLRA") governs the appointment of a lead plaintiff in every securities class action filed in this Circuit, and the two questions presented here are of substantial public and commercial importance: (i) whether a district court may discount a movant's valid, irrevocably assigned claims from the "largest financial interest" calculation because the recovery is subject to downstream distribution obligations; and (ii) whether the statutory presumption may be rebutted by the mere existence of a ***potential*** loss-causation defense, common in all securities fraud class actions where a class members' injuries derive from some but not all corrective disclosures, without proof that the defense renders the movant incapable of representing the class.

No court of appeal, let alone the Ninth Circuit, has answered either question. The non-statutory "personal-retention" metric the District Court adopted would disqualify virtually every category of pass-through claimant—investment managers, pension funds, and trustees—whose recoveries are subject to distribution duties arising by contract or operation of law, generating satellite litigation over financial interest in case after case. The rebuttal ruling is equally consequential: treating the existence of potential loss-causation defenses as

sufficient to displace the presumptive lead plaintiff creates a competing-movant veto in every securities case, allowing any movant who held through a later disclosure to characterize earlier disclosures as insufficient and unseat the largest-loss claimant on a defense common to the entire class. Mandamus is the appropriate vehicle to resolve these recurring, outcome-determinative questions now, before an unreviewed and erroneous methodology hardens into the default rule for lead-plaintiff selection throughout the Circuit.

The gravity of these questions is best understood against the statutory framework the District Court set aside. The PSLRA directs courts to follow a mandatory three-step sequence when appointing a lead plaintiff: (i) identify the movant with the largest financial interest in the relief sought by the class; (ii) determine whether that movant makes a *prima facie* showing of typicality and adequacy; and (iii) permit rebuttal only upon proof that unique defenses render the movant incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(i), (iii)(I)–(II). This Court has twice enforced that sequence through mandamus, holding that district courts may not deviate from it or substitute their own judgment for the statutory presumption. *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002); *In re Mersho*, 6 F.4th 891 (9th Cir. 2021).

The District Court's July 13, 2026 Order Consolidating Cases and Appointing Lead Plaintiff ("Order") (Addendum at pp. 1-16) departed from that

sequence in three analytically distinct ways, applying inconsistent standards to comparable movants to replace the statutory presumption with the "beauty contest" this Court condemned in *Cavanaugh*, 306 F.3d at 732.

***First***, the Order redefined "financial interest in the relief sought by the class" to mean the amount of recovery a movant will personally retain after satisfying private obligations. Addendum at pp. 7-8. Under this non-statutory metric, Mr. Patel's $39.2 million in claimed losses—nearly double the Institutional Investors' collective $20.8 million—were reduced to approximately $13.62 million because his irrevocable assignments require him to remit portions of any recovery to assignors. *Id.* at p. 7 n.4. Yet the District Court simultaneously counted the Institutional Investors' full claims despite materially similar downstream distribution duties—including approximately $900,000 in Storebrand's assigned losses that counsel conceded on the record are subject to remittance. *Id.* at pp. 13, 49-50. The statute speaks of "the largest financial interest in the relief sought by the class," not the largest personal consumption of that relief. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The District Court's inconsistent application of its retention metric further violates *Cavanaugh's* requirement that an accounting method be "rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4.

***Second***, ruling in the alternative, the Order held that even if Mr. Patel possessed the largest financial interest, he failed the *prima facie* typicality and

adequacy requirements because his shares were sold prior to the March 19, 2026 indictment. Addendum at pp. 10-13. The District Court concluded there was a "danger" Mr. Patel would be "preoccupied" with establishing that earlier 2024 partial disclosures caused his losses. *Id.* at pp. 11-13. But the District Court applied a double standard to this adequacy analysis. While disqualifying Mr. Patel for a theoretical incentive to emphasize the 2024 disclosures, it simultaneously appointed the Institutional Investors despite their proposed co-lead counsel Bernstein Litowitz Berger & Grossmann LLP ("BLBG") actual conflict by actively prosecuting those exact same 2024 disclosures as lead counsel in a competing class action (*Super Micro I*). *Id.* at pp. 628, 631-35, 674-77.

***Third***, the Order found the presumption rebutted because Mr. Patel "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). But the "proof" cited—the mere existence of a potential loss-causation defense (common to class members in every multiple corrective disclosure action) and resulting potential incentive divergence (Addendum at pp. 10-12)—does not establish that Mr. Patel is actually incapable of adequate representation, especially when the District Court excused a tangible, counsel-driven conflict on the exact same loss-causation issue for the competing movants. Under the PSLRA, pointing to a potential defense is

insufficient; the statute requires evidentiary proof that the defense will actually render the movant incapable of representing the class. *Mersho*, 6 F.4th at 901–02.

This petition does not ask the Court to appoint Mr. Patel as lead plaintiff. It asks the Court to vacate the Order and direct reconsideration using a uniform financial-interest methodology, the PSLRA's required sequential process, and the statutory rebuttal standard—preponderance of the evidence. *In re Crain Walnut Shelling, LP*, 175 F.4th 1069, 1079-80 (9th Cir. 2026). That narrow relief is consistent with *Cavanaugh* and *Mersho* and appropriate for an order that, if left standing, will create a competing-movant veto over the statutory presumption in every case involving pass-through claimants or disclosure-timing differences.

*Crain Walnut*, which denied mandamus because the district court *correctly applied* the preponderance standard this Court then endorsed, does not counsel otherwise. Here the error is categorically different: the Order adopted a non-statutory financial-interest metric no appellate court has sanctioned, applied it inconsistently to comparable movants, and displaced the presumptive lead plaintiff based on potential defenses common to a vast majority of the class rather than proof of incapacity—an evidentiary shortcut this Court has never endorsed. "Mandamus relief can be appropriate to resolve novel and important procedural issues" and "particularly important questions of first impression" to resolve new

questions that otherwise might elude appellate review. *In re Kirkland*, 75 F.4th 1030, 1041 (9th Cir. 2023).

This is such a case. The need for immediate appellate supervision is acute because the error is not isolated but recurring. The "personal-retention" methodology has already been applied in two other district court decisions—none of which has received appellate review, and the Order threatens to entrench it as a template for displacing any assignee, trustee, executor, or fund manager whose recovery is subject to pass-through obligations. Because a lead-plaintiff order is not a final judgment and cannot be effectively reviewed on appeal from final judgment, the error will otherwise evade correction, and movants with materially identical structures will face vastly inconsistent results turning entirely on the judicial draw rather than the statutory text. Only this Court can supply the guidance trial judges need to apply the PSLRA's financial-interest and rebuttal standards uniformly and to preserve the administrable, predictable process Congress designed.

## II. RELIEF SOUGHT

Petitioner respectfully requests that this Court:

(1) Issue a writ of mandamus directing the United States District Court for the Northern District of California to vacate its July 13, 2026

Order Consolidating Cases and Appointing Lead Plaintiff (Addendum at pp. 1-16); and

(2) Direct the District Court to reconsider the competing lead-plaintiff motions applying: (a) a uniform financial-interest methodology consistent with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); (b) the PSLRA's required sequential process, including the statutory presumption; and (c) the statutory rebuttal standard, which requires proof that unique defenses render the presumptive lead plaintiff *incapable* of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

## III. ISSUES PRESENTED

1. Whether the PSLRA's "largest financial interest in the relief sought by the class" permits a district court to exclude valid, irrevocably assigned claims—over which the movant holds all right, title, interest, and litigation control—solely because the recovery is subject to a downstream distribution obligation, which would effectively prohibit any trustee, pension fund, fund manager, and receiver from serving as lead plaintiff.

2. Whether the PSLRA's presumption in favor of the largest financial stakeholder may be denied or rebutted based solely on the existence of a potential loss-causation defense, common in all securities fraud class actions where a class

member's injuries derive from some but not all corrective disclosures, without proof that the defense will dominate the litigation or render the movant incapable of adequately representing the class.

## IV. STATEMENT OF THE CASE

### A. The PSLRA's Lead Plaintiff Framework

The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the movant with "the largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc). This Court requires a sequential analysis. *Cavanaugh*, 306 F.3d at 729–30. First, the court identifies the largest financial stakeholder using a "rational and consistently applied" methodology and determines whether that movant makes a prima facie showing of typicality and adequacy. *Id.* at 730, n.4. At this step, "the process is not adversarial, so the Rule 23 determination should be based on only the movant's pleadings and declarations." *Mersho*, 6 F.4th at 899. *Cavanaugh*, 306 F.3d at 730.

Next, the competing movants may rebut the presumption, but "only upon proof" that the presumptive lead plaintiff "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also*, *Cavanaugh*, 306 F.3d at 730, 732–33. Courts determine whether a plaintiff will adequately represent a class by answering two

questions: (1) do the movant and its "counsel have any conflicts of interest with other class members" and (2) will the movant and its "counsel prosecute the action vigorously on behalf of the class?" *Mersho*, 6 F.4th at 899–900.

**B. Procedural History**

This petition arises from three consolidated securities fraud class actions filed in the Northern District of California—*Bhuva v. Super Micro Computer, Inc.*, No. 3:26-cv-02606-JSC; *City of Hialeah Employees' Retirement System v. Super Micro Computer, Inc.*, No. 3:26-cv-03018-JSC; and *Chung v. Super Micro Computer, Inc.*, No. 3:26-cv-04394-JSC. Each complaint alleges that Super Micro Computer, Inc. ("Super Micro") and its officers engaged in an export-control fraud scheme involving materially false statements regarding the company's compliance with U.S. export restrictions. Addendum at p. 2. The consolidated class period runs from February 2, 2024, through March 19, 2026. *Id.* The *Bhuva* and *City of Hialeah* complaints tie loss causation entirely to the end of the class period: March 19, 2026, when the unsealing of a federal indictment against three Super Micro officers caused a precipitous decline in the company's stock price. *Id.* at pp. 2, 10-11. In contrast, the *Chung* complaint additionally alleges partial corrective disclosures occurred throughout 2024. *Id.* at p. 11.

Several persons or entities moved for appointment as lead plaintiff. The dispute ultimately centered on two primary movants—both of whom relied heavily on assigned claims or fiduciary obligations to establish their financial interests.

***First***, Mr. Patel asserted the "largest financial interest in the relief sought" of $39,248,880.55 (Addendum at pp. 246, 268-82), nearly doubling that of the next nearest movant. *Id.* at p. 198. Approximately $5.6 million of Mr. Patel's losses arose from shares he held and purchased directly. *Id.* at p. 268. The remainder derived from claims assigned to him by his daughter (requiring a 100% remittance to the assignor), by Sunburst Express (requiring a 50% remittance of proceeds to the assignor), by Skyways Hotel (requiring a 20% remittance of proceeds), and by three other corporate entities (two of which are now dissolved and all requiring a 100% remittance of proceeds), as explained in his supporting declaration and related assignments. *Id.* at pp. 284–325. All purchases underlying Mr. Patel's personal and assigned claims were made between August 22 and August 26, 2024, and all shares were sold by November 4, 2024. *Id.* at pp. 269–82. Critically, Mr. Patel was responsible for managing the investments, legal affairs and insurance matters for each entity, and personally made every one of these investment decisions—directing each purchase and sale across both his direct holdings and the assigned accounts, which he controlled as investment manager of the relevant entities. *Id.* at pp. 286-90.

***Second***, the Institutional Investors—Handelsbanken Fonder AB, the Public Employees' Retirement System of Mississippi, and Storebrand Asset Management AS—collectively asserted approximately $20.8 million in losses. *Id.* at p. 405. Handelsbanken asserts approximately $11.6 million, Mississippi asserts approximately $4.8 million, and Storebrand asserts approximately $4.4 million. *Id.* at pp. 440–48. Like Mr. Patel, Storebrand Asset Management's interest derived in part from assignments of claims from four funds, and from acting as an undefined legal representative of six additional funds. *Id.* at p. 424.

### 1. The District Court's Inconsistent Application of a Unique "Financial Interest" Metric

In determining the presumptive lead plaintiff, the court adopted a unique metric for calculating "financial interest," holding that it encompasses only the proceeds a movant will personally retain after satisfying downstream obligations, citing its own opinion in *Hsu v. Pubmatic, Inc.*, 2025 WL 3280896 (N.D. Cal. Nov. 25, 2025) and adopting the reasoning of *May v. Barclays PLC*, 2023 WL 5950689 (S.D.N.Y. Sept. 13, 2023). *See* Addendum at pp. 7-10. Relying on this metric, the court penalized Mr. Patel for his pass-through obligations, deducting the amounts he is required to remit to his assignors and reducing his financial interest from $39.2 million to $13.62 million. *Id.* at p. 7 n.4.

The court, however, failed to apply this same deduction to the Institutional Investors—Handelsbanken Fonder AB (a Swedish asset manager seeking recovery

for its managed funds), the Public Employees' Retirement System of Mississippi (a state agency whose funds are held in trust for the benefit of its participants), and Storebrand Asset Management AS (a Norwegian asset manager acting as an assignee or representative for underlying funds). Collectively, these entities asserted $20.8 million in losses. *Id.* at p. 405. Yet, none of these entities are the ultimate economic beneficiaries of the assets they manage. Like Mr. Patel, they are fiduciaries and managers contractually and legally obligated to distribute or allocate recovered proceeds to downstream beneficiaries, pensioners, or underlying funds. *Id.* at p. 108–10. Indeed, the Institutional Investors' counsel explicitly conceded on the record during the lead plaintiff hearing that nearly $900,000 of Storebrand's claimed losses were subject to assignments and downstream remittance. *Id.* at p. 50.

**2. The Court's Flawed and Legally Unsupportable Reasoning for a "Reinvestment" Exception to Justify Its Inconsistent Application**

The court acknowledged that "an institutional investor's financial interests may be similar in character to Mr. Patel's assigned interest," but excused the Institutional Investors' downstream obligations by reasoning that a pension fund can "reinvest those funds without immediately returning those funds to pension holders." *Id.* at p. 10. The court concluded that this ability to reinvest means the institutional fund "actually experiences the gains and losses." *Id.*

This reasoning creates an unworkable standard by conflating administrative custody with true economic ownership. Whether a public pension fund pools recoveries to pay future retiree benefits, a hedge fund manager credits proceeds to its net asset value for eventual distribution to limited partners, a corporate trustee parks settlement funds in interest-bearing accounts before making scheduled trust disbursements, or a direct assignee passes litigation proceeds back to its assignors, the underlying economic reality is identical: 100% of the interest belongs to downstream beneficiaries. A fiduciary's routine authority to temporarily hold or reinvest client capital does not magically transform it into the economic owner of a claim. By relying on a "reinvestment" exception to excuse institutional investors while penalizing individual assignees, the court arbitrarily elevated the mere *timing* of a pass-through payout over the absolute certainty of the downstream obligation.

By penalizing Mr. Patel for his pass-through assignments while carving out an arbitrary "reinvestment" exception for institutional fiduciaries, the court applied an inconsistent standard. Had the court's personal retention metric been applied evenly across all movants, the Institutional Investors' financial interest would be reduced to zero, leaving Mr. Patel's $13.62 million retained interest as the undisputed largest financial interest. *Id.* at p. 109.

### 3. The Speculative Holding on Typicality and Loss Causation

Even assuming Mr. Patel had the largest financial interest, the court held in the alternative that he failed to satisfy the *prima facie* typicality and adequacy requirements. *Id.* at pp. 10–13. Because Mr. Patel sold his shares in late 2024 (after the 2024 corrective disclosures), the court found a speculative "danger" that Mr. Patel would be "preoccupied" with the 2024 corrective disclosures, reasoning that the timing of his losses creates a unique incentive for him to emphasize the 2024 events over the 2026 indictment. *Id.* at pp. 10–12. On this basis, the court concluded the presumption was rebutted by a preponderance of the evidence.

### 4. The Inconsistent Treatment of Competing Incentives

However, the court failed to apply this same rigorous scrutiny to the Institutional Investors regarding the exact same 2024 disclosures. The Order notes that BLBG—appointed by the court as co-lead counsel for the Institutional Investors—simultaneously serves as lead counsel in *In re Super Micro Computer, Inc. Securities Litigation*, No. 5:24-cv-06147-EJD (N.D. Cal.) ("*Super Micro I*"). *Super Micro I* is an earlier-filed action with an overlapping class period that heavily litigates the 2024 events as corrective disclosures. *See* Addendum at pp. 628, 631-35, 674–77.

Mr. Patel objected that BLBG's obligations in *Super Micro I* compete directly with the loss causation theories in this action, creating conflicting

incentives to maximize damages across two competing cases. *Id.* at pp. 203-205. Yet, while the court disqualified Mr. Patel based on a *theoretical* incentive to focus on the 2024 disclosures, it excused the Institutional Investors' *actual* conflict regarding those same 2024 disclosures, which consistent with their conflict, they attacked. *Id.* at pp. 14–15. The court dismissed the conflict by relying on an internal "ethical wall" at BLBG and the presence of Kessler Topaz Meltzer & Check LLP as co-counsel. *Id.* at p. 15.

By presuming Mr. Patel would be irreparably conflicted by the 2024 disclosures, while simultaneously appointing Institutional Investors whose counsel is actively prosecuting competing claims on those exact same corrective disclosures, the court applied an irreconcilable double standard.

## V. REASONS WHY THE WRIT SHOULD ISSUE

### A. The Mandamus Standard

This Court evaluates mandamus petitions under *Bauman v. United States District Court*, 557 F.2d 650, 654–55 (9th Cir. 1977): (1) whether the petitioner has no other adequate means to attain relief; (2) whether the petitioner will be damaged in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the order represents an oft-repeated error; and (5) whether the order raises new and important issues of first impression.

The third factor—clear error—is often dispositive (*Crain Walnut*, 175 F.4th at 1081) but is "met even without controlling precedent 'if the 'plain text' of the statute prohibits the course taken by the district court.'" *Kirkland*, 75 F.4th at 1041 (citing *Mersho*, 6 F.4th at 898). Alternatively, "[w]here a petition for mandamus raises an important issue of first impression, . . . a petitioner need show only 'ordinary (as opposed to clear) error.'" *Id.* (*citing Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018)).

In *Crain Walnut*, mandamus was denied because the district court *correctly applied* the preponderance standard this Court endorsed. 175 F.4th at 1079–80. Here, the error is the exact opposite: the court adopted a non-statutory metric no appellate court has sanctioned, applied inconsistent treatment to comparable movants, and displaced the statutory presumption without the proof the statute requires. Unlike *Crain Walnut*—where the petitioner challenged the *quantum* of evidence required to rebut the presumption, and this Court held the district court applied the correct preponderance standard—Mr. Patel challenges the *object* of proof (incapacity versus mere existence of a defense) and the *consistency* of the methodology (inconsistent financial-interest calculations). These are categorical legal errors, not close calls on evidentiary sufficiency. Moreover, because it presents an issue of first impression regarding financial interest methodology, Mr. Patel need only establish ordinary error; a threshold this record clears decisively.

## B. Factor 3: The District Court Clearly Erred by Replacing the PSLRA's Mandatory Sequence with a Non-Statutory Comparative Selection Methodology

### 1. The Personal-Retention Metric Conflicts with the Statute and Was Inconsistently Applied

The PSLRA creates a presumption in favor of the movant with "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The statute measures the *interest* attached to the *relief*—not the movant's personal retention of that relief after collection and satisfaction of extraneous obligations. The court's personal-retention metric conflicts with the statutory text, lacks appellate support, and was applied inconsistently.

***The statutory text.*** A valid assigned claim confers a direct economic stake: the assignee recovers if the class prevails and receives nothing if it loses. The assignee's *interest* in the relief is the full value of the claim, regardless of post-recovery cash flows. The Supreme Court confirmed this in *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 285–89 (2008), holding that assignees of legal claims have Article III standing even when contractually obligated to remit all proceeds to the assignor. If a full-remittance assignee has sufficient "financial interest" for Article III, it follows even more that a partial-remittance assignee like Mr. Patel—retaining $13.62 million in personal economics—has a "financial interest in the relief sought by the class" under the PSLRA.

***Consistent application.*** This Court held in *Cavanaugh* that courts must apply a "rational and consistently applied" methodology when determining financial interest. 306 F.3d at 730 n.4. The Order fails this requirement.

It treated the Institutional Investors' claims as fully counting toward the Institutional Investors' $20.8 million (even counting the Institutional Investor counsel's concession that approximately $900,000 of its claims arose from contractually near identical assigned accounts requiring remittance). Addendum at pp. 13, 50. The court's distinction—that their obligations are fiduciary rather than "contractual[]"—appears nowhere in the statute. *Id.* at p. 10. Whether a movant asserts claims via direct assignment, a trustee's legal title, or through prudential standing on behalf of third-party managed funds, the economic effect is identical: the movant possesses the requisite financial interest to vigorously protect the class's claims.

The Institutional Investors' own submissions establish the same structure as Patel: they are money managers touting "nearly $350 billion in combined assets under management." *Id.* at pp. 235, 399. Handelsbanken manages funds for underlying investors; Mississippi holds its assets for the benefit of public-employee pension beneficiaries; and Storebrand sues as manager, assignee, or representative of underlying funds. *Id.* at pp. 417, 424, 451–52. In each case, the movant's ultimate economic interest in any class recovery is zero—every dollar

will be distributed to participants or beneficiaries. Yet the court counted their full-claimed losses without deduction. The inconsistency is stark: Mr. Patel's contractual obligation to remit *portions* of recovery reduces his "financial interest," while the institutions' obligations to distribute *all* recovery do not.

The arithmetic underscores the error. Under the statutory text—counting all valid, irrevocably assigned claims owned and controlled by the movant—Mr. Patel has $39.2 million versus the Institutional Investors' $20.8 million. Under the court's own net-retention metric, applied consistently to all movants, Mr. Patel's $13.62 million in retained economics still exceeds any individual institutional movant's alleged interest, and the entire group's net retention is zero. *Id.* at p. 61. The panel need not resolve the assignment question—it need only conclude that the methodology must be applied consistently. *Cavanaugh*, 306 F.3d at 730 n.4.

***No limiting principle.*** The personal-retention metric has no principled stopping point. If downstream obligations diminish "financial interest," courts would need to subtract pension beneficiaries' shares, managed-fund participants' interests, creditors' security interests, litigation funders' contractual shares, and attorneys' contingency fees. The PSLRA does not instruct this forensic tracing exercise—it adopts "largest financial interest" as an objective, administrable proxy for litigation incentive.

***Distinguishing aggregation motivated by "gamesmanship."*** Petitioner acknowledges the concern raised in *Barclays* about movants who assign claims for purposes of "gamesmanship" to ensure the largest financial interest. *Barclays*, 2023 WL 5950689, at *14–15. That concern is not present here. Mr. Patel's assignments reflect their purpose: winding up dissolved family entities whose investments Mr. Patel had always managed. Each assignment is irrevocable, derives from accounts Mr. Patel personally managed or entities where he served as director or officer, and is accompanied by substantial retained economics ($5.6 million direct + 80% of Skyways + 50% of Sunburst). *Id.* at pp. 284–325. These are not assignments from strangers made to counter competing movants with larger financial interests; they are claims arising from a family/associate hotel investment operation in which Mr. Patel had direct managerial and investment control. Even if some limiting principles were appropriate, it must be "rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4. A rule deducting, after prospective collection, contractual remittance obligations to the investors, but not institutional investment managers' fiduciary obligations to remit, is neither rational nor consistent.

### 2. The Court's Typicality and Adequacy Conclusions Misapplied the Governing Standards and Were Unsupported by the Record

***Typicality.*** Under Rule 23(a)(3), claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially

identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) permits consideration of whether a unique defense, like non-reliance not common to the class, "threaten[s] to become the focus of the litigation," presenting "a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." 976 F.2d at 508 (internal citations omitted). But rebutting typicality requires a showing that the defense will *dominate* the case—not merely that a disputed issue exists. *Id.*

The court's typicality analysis fails for two reasons. *First*, Mr. Patel's claims arise from the identical fraud scheme. He purchased Super Micro stock during the class period and held through two substantial alleged partial corrective disclosures (August 28, 2024, ~19% decline; October 30, 2024, ~32–33% decline) specifically pleaded as corrective in the consolidated *Chung* complaint. Addendum at pp. 565–66. His claims rest on the same legal theory and the same misstatements. Under *Hanon*, typicality requires only that "members have the same or similar injury," "the action is based on conduct which is not unique to the named plaintiffs," and "other class members have been injured by the same course of conduct." 976 F.2d at 508. A lead plaintiff need not have "standing to sue on every available cause of action." *Sigman v. NuScale Power Corp.*, 2024 WL 727253, at *5 (D. Or. Feb. 22,

2024) (quoting *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013)). Multiple courts have appointed lead plaintiffs whose trading did not overlap with class members who sold only after the final corrective disclosure. *See Kusen v. Herbert*, 2023 WL 8171736, at *8 (N.D. Cal. Nov. 24, 2023); *Sigman*, 2024 WL 727253, at *5 (citing cases rejecting disqualifying a presumptive lead plaintiff on the ground that he did not retain shares through every corrective disclosure).

*Second*, the court identified no proof that a loss-causation defense as to a particular disclosure would dominate the litigation. *Mersho*, 6 F.4th at 901–02 (holding reliance on "speculation" clear error). Without a finding that the 2024 disclosures lacked merit as a matter of law, the court's assumption that they would derail Mr. Patel's representation rests entirely on speculation. Because no party has established which disclosures are actually actionable at this pre-merits stage, a lead plaintiff cannot be disqualified simply because his loss-causation theory involves contested facts faced by virtually every securities fraud plaintiff. The proper remedy for trading-timing differences is structural—allowing the lead plaintiff to add additional named plaintiffs—not disqualification of the largest financial stakeholder from overseeing the litigation. *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 669 n.38 (C.D. Cal. 2005) ("Even if none of the presently named plaintiffs has standing to pursue such a claim . . . plaintiffs may seek to add new named plaintiffs

in order to assert the claim."); *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *6 (N.D. Cal. Apr. 28, 2016) ("[T]he lead plaintiff in a securities class action has a responsibility to identi[f]y and include named plaintiffs who have standing to represent the various potential subclasses of plaintiffs who may be determined, at the class certification stage, to have distinct interests or claims.") (internal citation omitted).

***Adequacy.*** Rule 23(a)(4) asks whether "the representative parties will fairly and adequately protect the interests of the class." *Hanlon*, 150 F.3d at 1021; *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992). The District Court concluded that the timing of Mr. Patel's losses incentivizes him to emphasize the 2024 disclosures over the 2026 disclosures benefiting later-holding class members. Addendum at p. 11. But this assumes the very merits determination the District Court acknowledged was premature. *Id.* at p. 12.

Nor did the District Court identify an actual antagonism. *Id.* at p. 11. Mr. Patel's interest in proving the fraud to maximize recovery from *both* the 2024 and 2026 disclosures aligns with the class. Rule 23(a)(4) asks whether the representative will *vigorously prosecute* the action, not whether their individual transaction timeline matches every class member's. *Hanlon*, 150 F.3d at 1020. Mr. Patel has the largest loss, retained experienced counsel, and possesses a concrete incentive to maximize class recovery. Disqualifying Mr. Patel as atypical would

effectively read any intra-period class member, no matter how large their loss, out of the lead plaintiff process. That result is inconsistent with the PSLRA's design and with Rule 23's adequacy requirement.

#### 3. The Speculative Rebuttal Finding Applied the Wrong Object of Proof

The PSLRA permits rebuttal "only upon proof" that the presumptive lead plaintiff "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). This Court confirmed the preponderance standard of proof in *Crain Walnut*, 175 F.4th at 1079. But the standard of proof is only half the inquiry; the other half is the *object* of proof. The statute requires proof that the defense "render[s] such plaintiff *incapable*" of adequately representing the class. "Incapable" denotes inability, not imperfection.

The Order, however, only identified a possible loss-causation defense and inferred divergent incentives. Addendum at pp. 10-13. But it never found—and the record does not show—that Mr. Patel would be *incapable* of representing the class.

This Court's precedence requires far more. *Mersho* held that "competing movants must point to evidence of inadequacy," not "speculation." 6 F.4th at 901–02. *Cavanaugh* requires proof of conduct "so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on [the] plaintiff's willingness or ability to perform the functions of lead plaintiff." 306

F.3d at 732–33. The court identified none of these—only a concern of Mr. Patel's potential incentives. That is a routine question of any potential lead plaintiff, not proof of incapacity.

#### 4. The Inconsistent Treatment of Comparable Incentive Issues Confirms Structural Error

The court's differential treatment of comparable incentive issues confirms it replaced the statutory sequence with an impermissible beauty contest. Addendum at pp. 10–15. The court treated Mr. Patel's theoretical incentive to emphasize the 2024 disclosures as *disqualifying* (*id.* at pp. 10–13), yet dismissed the appointed group's demonstrated incentive to *minimize* those same disclosures as manageable. *Id.* at pp. 14-15, 85–87.

The inconsistency is concrete. The Institutional Investors' briefing argued that the August and October 2024 events lack a "credible connection" to the export-control fraud (*id.* at pp. 218, 228)—a sharp tactical reversal from their opening brief, which embraced those exact same events as corrective. *Id.* at pp. 401–02. Meanwhile, their proposed co-counsel, BLBG, simultaneously serves as lead counsel in *Super Micro I*, attributing those same stock declines to *other factors* during an overlapping class period. *Id.* at pp. 628, 631-35, 674–77. Proving here that the corrective disclosures were attributed to something else would threaten recovery in *Super Micro I*. The Order brushed this aside by relying on an ethical wall and the existence of co-counsel. *Id.* at pp. 14–15.

The point is not that the Institutional Investors are categorically disqualified, but that the court applied double standards: treating Mr. Patel's incentive issue as debilitating while deeming the institutions' as manageable. If an ethical wall and co-counsel arrangement can cure a demonstrated conflict for institutions, similar management tools can address any theoretical conflict for Mr. Patel—who explicitly offered to add co-plaintiffs to neutralize potential challenges. *Id.* at p. 111. The court's refusal to consider safeguards for one movant while crediting them for another is inexplicable, irreconcilable, and fatal to an even-handed PSLRA process.

This inconsistency reveals that the court conducted the "beauty contest" *Cavanaugh* rejected—selecting the preferred candidate rather than following the statutory presumption. 306 F.3d at 732. Petitioner does not ask this Court to resolve the ethical-wall issue or disqualify the Institutional Investors. The inconsistency simply proves the statutory sequence was displaced by comparative judicial preference. If safeguards adequately address their counsel's conflict, the same logic compels concluding that comparable safeguards address any theoretical "preoccup[ation]" for Mr. Patel—meaning the statutory presumption must control.

### C. Factors 1 and 2: No Adequate Alternative Remedy Exists and Patel Will Be Irreparably Damaged

A lead-plaintiff order is not a final judgment and escapes collateral-order appeal. *Mersho*, 6 F.4th at 902–03. Post-judgment review is practically illusory: by

the time the case reaches judgment, the litigation will have been shaped entirely by the improperly appointed lead plaintiff's choices regarding case theory, discovery, experts, and settlement. Mr. Patel, lacking party status, has no mechanism to challenge a final judgment. Mandamus is uniquely necessary to cure this procedural trap. *Mersho*, 6 F.4th at 903.

The harm is immediate and irreparable. Mr. Patel loses his statutory right to serve as lead plaintiff—a right Congress created specifically to empower investors with the largest financial stake.

**D. Factor 4: Oft-Repeated Error**

The fourth *Bauman* factor need not be established where Factor 5 is strong. *Kirkland*, 75 F.4th at 1051. While this factor is not the primary basis for relief, the personal-retention methodology has proliferated in unreviewed district court decisions like *Barclays* and *Hsu*. Left standing, the Order sets a dangerous template to displace any assignee, executor, trustee, or fund manager bound by pass-through obligations.

Similarly, courts routinely reject the argument that a movant is atypical for not holding shares through the final corrective disclosure. *Retail Wholesale Dep't Store Union Local 338 Ret. Fund v. Stitch Fix, Inc.*, 2023 WL 3613313, at *2, 4 (N.D. Cal. May 22, 2023) ("[P]laintiffs who sell their stock at a net loss after the first of multiple disclosures are not precluded from serving as lead plaintiffs.");

*Kusen*, 2023 WL 8171736, at *8, 10; *Sigman*, 2024 WL 727253, at *5–6. Left uncorrected, the Order subjects class-period purchasers who sold before final disclosures to inconsistent results based entirely on the judicial draw, undermining the uniform predictability Congress intended under the PSLRA.

### E. Factor 5: New and Important Issue of First Impression

The fifth *Bauman* factor favors mandamus where the petition raises "new and important problems, or issues of law of first impression." 557 F.2d at 655. No circuit has decided whether the PSLRA permits excluding downstream distribution obligations—let alone granting special treatment to institutional movants—nor whether a largest-loss movant, who sold before the last alleged partial disclosure, is subject to debilitating unique defenses or is otherwise, by that reason alone, deemed inadequate under Rule 23.

These issues have broad systemic implications. The retention metric invites satellite litigation over downstream obligations for every category of pass-through claimant—trustees, pension funds, fund managers, and receivers—subjecting each to challenges based on distribution duties arising from law or contract. Similarly, misapplying *Hanon* creates a competing-movant veto: any movant who held through a later disclosure can dismiss earlier losses and displace the largest-loss claimant under the guise of "preoccup[ation]."

Administrability also supports mandamus. Congress selected "largest financial interest" as an objective proxy for litigation incentive—a straightforward calculation designed to fit within the PSLRA's compressed 90-day timeline. 15 U.S.C. § 78u-4(a)(3)(B)(i). Forcing courts into forensic accounting of downstream obligations converts this expedited process into the very satellite litigation Congress intended to eliminate. The same is true of endless contests over which corrective disclosure triggered specific losses. This Court's intervention is urgently needed to preserve the administrability of the lead-plaintiff process, ensure consistency, and prevent the impermissible "beauty contest" prohibited in *Cavanaugh*.

## VI. CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court issue a writ of mandamus directing the court to (i) vacate the Order and (ii) reconsider the competing lead-plaintiff motions applying a uniform financial-interest methodology consistent with statutory text and the statutory rebuttal standard.

Dated: July 27, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By *_/s/ Reed R. Kathrein_*
Reed R. Kathrein
Lucas E. Gilmore
715 Hearst Avenue, Suite 300

Berkeley, CA 94710
Tel: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com

*Counsel for Petitioner Jayantilal Patel*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this petition complies with the length requirements of Federal Rule of Appellate Procedure 21(d) and Ninth Circuit Rule 21-2(c) because it contains 6,263 words and is within the 30-page limit, excluding the parts exempted in Federal Rule of Appellate Procedure 21(a)(2)(C) and 32(f). I further certify that this petition complies with the typeface and style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font.

Dated: July 27, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By *<u>/s/ Reed R. Kathrein</u>*

Reed R. Kathrein
Lucas E. Gilmore
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com

*Counsel for Petitioner Jayantilal Patel*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Service has been accomplished via electronic mail to the following counsel for the Real Parties in Interest:

| | |
|---|---|
| *Counsel for Movants Institutional Investor Plaintiffs (Storebrand, Mississippi, Handelsbanken):*<br><br>**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**<br><br>Scott R. Foglietta<br>1251 Avenue of the Americas, 44th Floor<br>New York, NY 10020<br>(212) 554-1400<br>Scott.Foglietta@blbglaw.com<br><br>**KESSLER TOPAZ MELTZER AND CHECK LLP**<br><br>Jennifer Lauren Joost<br>One Sansome Street, Suite 1850<br>San Francisco, CA 94104<br>(415) 400-3000<br>Jjoost@ktmc.com<br><br>Naumon A Amjed<br>280 King of Prussia Road | *Counsel for Defendants Super Micro Computer, Inc., Charles Liang, and David Weigand:*<br><br>**FRESHFIELDS US LLP**<br><br>Boris Feldman<br>Doru Gavril<br>Freshfields US LLP<br>855 Main Street<br>Redwood City, CA 94063<br>(650) 618-9250<br>Boris.Feldman@freshfields.com<br>Doru.Gavril@freshfields.com<br><br>*Counsel for* Chung *Defendant Yih-Shyan "Wally" Liaw:*<br><br>**BIENERT KATZMAN LITTRELL WILLIAMS LLP**<br><br>Daniel Z. Goldman<br>Colm Burton Cross<br>Olivia Lauren Weber |

| | |
|---|---|
| Radnor, PA 19087<br>(610) 667-7706<br>Namjed@ktmc.com | 903 Calle Amanecer, Suite 350<br>San Clemente, CA 92673<br>(949) 369-3700<br>Dgoldman@bklwlaw.com<br>Ccross@bklwlaw.com<br>Oweber@bklwlaw.com |
| *Counsel for Interested Party City of Hialeah Employees' Retirement System*<br><br>**KESSLER TOPAZ MELTZER AND CHECK LLP**<br><br>Jennifer Lauren Joost<br>One Sansome Street, Suite 1850<br>San Francisco, CA 94104<br>(415) 400-3000<br>Jjoost@ktmc.com<br><br>**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**<br><br>Scott R. Foglietta<br>Hannah Ross<br>1251 Avenue of the Americas, 44th Floor<br>New York, NY 10020<br>(212) 554-1400<br>Scott.Foglietta@blbglaw.com<br>hannah@blbglaw.com<br><br>**KLAUSNER KAUFMAN JENSEN & LEVINSON, P.A.**<br><br>Robert D. Klausner<br>Stuart A. Kaufman<br>7080 Northwest 4th Street<br>Plantation, FL 33315<br>Telephone: (954) 916-1202<br>bob@robertdklausner.com<br>stu@robertdklausner.com | *Counsel for Movant Valikhan Kunakbayev*<br><br>**LEVI & KORSINSKY, LLP**<br><br>Adam Marc Apton<br>1160 Battery Street East, Suite 100<br>San Francisco, CA 94111<br>(415) 373-1671<br>Aapton@zlk.com<br><br>*Counsel for Movant David Truong and Interested Party Apirva Bhuva*<br><br>**GLANCY PRONGAY WOLKE & ROTTER LLP**<br><br>Charles Henry Linehan<br>Robert Vincent Prongay<br>Pavithra Rajesh<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>(310) 201-9150<br>Clinehan@glancylaw.com<br>Rprongay@glancylaw.com<br>Prajesh@glancylaw.com<br><br>*Counsel for Movant JA Housing Inc.*<br><br>**THE ROSEN LAW FIRM, P.A.**<br><br>Laurence Matthew Rosen |

| | |
|---|---|
| | 355 South Grand Avenue, Suite 2450<br>Los Angeles, CA 90071<br>(213) 785-2610<br>Lrosen@rosenlegal.com |
| *Counsel for Movant Arkansas Teacher Retirement System*<br><br>**MOTLEY RICE LLP**<br><br>Wesley Dunkirk<br>1440 Broadway Suite 206<br>Oakland, CA 94612<br>(510) 368-7685<br>Wdunkirk@motleyrice.com<br><br>Lance V. Oliver<br>28 Bridgeside Boulevard<br>Mt. Pleasant, SC 29464<br>(843) 216-9000 Loliver@motleyrice.com<br><br>**LABATON SUCHAROW LLP**<br><br>Serena Hallowell<br>140 Broadway<br>New York, NY 10005<br>(212) 907-0700<br>Shallowell@motleyrice.com | *Counsel for Movant Beau Savage*<br><br>**FARUQI & FARUQI, LLP**<br><br>Lisa Tamiko Omoto<br>1901 Avenue of the Stars, Suite 1060<br>Los Angeles, CA 90067<br>(424) 365-3225<br>Lomoto@faruqilaw.com<br><br>*Counsel for Movants Kelly Tran and Li Qunnan*<br><br>**POMERANTZ LLP**<br><br>Jennifer Pafiti<br>1100 Glendon Avenue, 15th Floor<br>Los Angeles, CA 90024<br>(310) 405-7190<br>Jpafiti@pomlaw.com |

Upon request by counsel for a Real Party in Interest, a copy of this petition for writ of mandamus will be sent via USPS Priority Mail.

The District Court has been provided a copy of this petition for writ of mandamus via electronic mail and UPS Standard Overnight delivery to:

The Honorable Jacqueline Scott Corley
United States District Court

Office of the Clerk
450 Golden Gate Avenue
San Francisco, CA 94102

Dated: July 27, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By *<u>/s/ Reed R. Kathrein</u>*
Reed R. Kathrein
Lucas E. Gilmore
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com

*Counsel for Petitioner Jayantilal Patel*